IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

DOMINIQUE SPATAFORE,

      Plaintiff,

v.                                    CIVIL ACTION NO. 1:22-CV-108
                                              (KLEEH)

CITY OF CLARKSBURG,

      Defendant.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [ECF NO. 23]

Pending before the Court is Defendant, City of Clarksburg's Motion for Summary Judgment [ECF No. 23]. For the reasons discussed herein, the Motion is **GRANTED**.

## I.   PROCEDURAL HISTORY

On September 22, 2022, Plaintiff Dominique Spatafore filed suit in the Circuit Court of Harrison County, West Virginia. Defendant City of Clarksburg removed the action to this Court on October 18, 2022. ECF No. 1. Plaintiff's Complaint alleged (1) Family and Medical Leave Act ("FMLA") retaliatory discharge, (2) disability discrimination under the West Virginia Human Rights Act, (3) retaliatory discharge in violation of a substantial public policy, and (4) a constitutional tort under the West Virginia Constitution. ECF No. 1-3. The Court dismissed Count Four upon an unopposed motion by Defendant. ECF No. 22.

On October 6, 2023, Defendant filed Defendant, City of

Clarksburg's Motion for Summary Judgment [ECF No. 23]. On March 5, 2024, Plaintiff responded in opposition to summary judgment [ECF No. 44], and Defendant filed its reply in support on March 19, 2024 [ECF No. 59]. Thus, the Motion is fully briefed and ripe for review.

## II.  FACTUAL BACKGROUND

This lawsuit arises from Plaintiff Dominque Spatafore's ("Plaintiff" or "Spatafore") discharge from the City of Clarksburg's ("Defendant" or "City") employment. Defendant hired Plaintiff as the Marketing and Community Relations Specialist in November 2014. Def. Ex. A, Def.'s Mot. Summ. J., ECF No. 24.

On October 20, 2020, Plaintiff received a copy of the City's *Personnel & Administrative Policies and Procedures Manual* ("Handbook"). Id. at Def. Ex. C. Plaintiff understood that it was her responsibility to comply with the Handbook's policies and procedures. Id.

The City follows a progressive discipline policy. Pl. Ex. 2, Pl.'s Resp. in Opp., Harry Faulk Dep. at 30:17-20, ECF No. 44-2. During her employment, Plaintiff received verbal warnings for taking an extended lunch hour on February 2, 2021, and for improper notification for an absence on January 29, 2021. Def. Ex. D, Def.'s Mot. Summ. J., ECF No. 24.

On June 1, 2021, Plaintiff began reporting to the new Director of Economic Development, John Whitmore, as her direct supervisor.

Id. at Def. Ex. F. Previously, Plaintiff's direct supervisor was City Manager Harry Faulk. Pl. Ex. 2, Pl.'s Resp. in Opp., Harry Faulk Dep. at 25:19 – 26:1, ECF No. 44-2.

Plaintiff suffers from Crohn's disease and an eating disorder. Id. at Pl. Ex. 1, Dominque Spatafore Dep. at 110:7-112:24, ECF No. 44-1. Plaintiff claims she took days off while employed with the City due to her Crohn's disease flaring up. Id.[1] On July 21, 2021, Plaintiff informed the City that she would be entering a four-week residential treatment program for an eating disorder. Def. Ex. G, Def.'s Mot. Summ. J., ECF No. 24; Pl. Ex 3, ECF No. 44-3. The City provided Spatafore with information regarding the FMLA leave process, and her request for leave was granted. Def. Exs. H, I, Def.'s Mot. Summ. J., ECF No. 24; Pl. Ex. 4, Pl.'s Resp. in Opp., ECF No. 44-4. Pursuant to the City's Handbook, Plaintiff was required to use her accumulated paid leave time before taking FMLA. Def. Ex. J, Def.'s Mot. Summ. J., ECF No. 24. The City also permitted employees to transfer sick days to other employees facing medical issues that required at least one month off work. Id. However, an employee would only receive the amount of donated time required and the City's policy provided

---

[1] The record does not show that the City, namely City Manager Harry Faulk, knew Plaintiff had taken sick days due to her Crohn's disease. Rather, Faulk learned of Plaintiff's Crohn's disease in 2021 when she went to rehabilitation for her eating disorder. Faulk Dep., ECF No. 44-2. Pl. Ex. 2, Pl.'s Resp. in Opp., Harry Faulk Dep. at 172:22-24, ECF No. 44-2.

that any excess donated would be returned to the donors. Id.

City Manager Harry Faulk approved Spatafore's request to solicit for donated paid leave time. Def. Exs. K-M, Def.'s Mot. Summ. J., ECF Nos. 24, 24-1. Plaintiff received enough donated time that she was paid for the entirety of her rehabilitation program. Id. at Def. Exs. B, P. In fact, Plaintiff received more donated time than she required, so the excess time donations were returned to the donors in accord with the City's Handbook policy. Id. at Def. Ex. Q.

Upon completion of her rehabilitation program, Plaintiff returned to work on September 13, 2021. Pl. Ex. 2, Pl.'s Resp. in Opp., Harry Faulk Dep. at 174:15-18, ECF No. 44-2. Thereafter, Plaintiff requested to periodically take longer lunch breaks and adjust her working hours to attend therapy. The City granted Plaintiff's request. Def. Ex. B, Spatafore Dep. at 121: 7-122: 17, ECF No. 24; Def. Ex. R, ECF No. 24-1.

On September 20, 2021, City Manager Faulk requested Plaintiff make a certain social media posting at 8:30 a.m. However, Plaintiff did not make the posting as required because she was waiting on a picture to be included in the post. Id. at Def. Ex. S, ECF No. 24-1. Following, Plaintiff requested a meeting to discuss her job duties. Id.

From September 22, 2021 to September 24, 2021, Plaintiff was required to take unpaid leave because she exhausted all her sick

4

leave. <u>Id.</u> at Def. Ex. U, ECF No. 24-1; Pl. Ex. 7, Pl.'s Resp. in Opp., ECF No. 44-7. Upon notification from the City that her sick time would be unpaid, Plaintiff called the City's policy "regressive" and requested to use leave time that had been donated to her when she was on FMLA leave. Def. Ex. U, ECF No. 24-1. However, the excess leave time had already been returned to the donors, in accord with the Handbook. <u>Id.</u>

As previously requested, Faulk and others met with Plaintiff to discuss her job duties, as part of a Performance Improvement Plan, on September 28, 2021. Pl. Ex. 2, Pl.'s Resp. in Opp., Harry Faulk Dep. at 174:19-22, ECF No. 44-2. During the meeting, Plaintiff was advised that her work performance had been unsatisfactory, including "limited communication regarding use of sick leave and leave of absence from the position; failure to complete tasks in a timely manner (website updates, Facebook posts, weekly work reports, position description)". Def. Ex. V, Def.'s Mot. Summ. J., ECF No. 24-1. Plaintiff thereafter informed the City that she did not believe she could meet the goals outlined in her performance plan. Def. Ex. B, Spatafore Dep. at 214: 18-22, Def.'s Mot. Summ. J., ECF No. 24.

Based upon Plaintiff's stated concern that she might not be able to complete the duties of her position, Plaintiff and the City discussed an open position in the Finance Department as an account clerk. <u>Id.</u> at 214: 23-215: 11. Plaintiff applied for and

was subsequently transferred to the account clerk position. Id. at Def. Exs. W-Y, ECF No. 24-1. Plaintiff earned the same salary and benefits in the new position, as she previously received as the Marketing and Community Relations Specialist. Id. at Def. Ex. B, Spatafore Dep. at 179:11-16. As part of Plaintiff's transfer to the Finance Department, Plaintiff's direct supervisor became Kim Karakiozis. Id. at Def. Ex. X.

On or about October 21, 2021, Plaintiff Facebook messaged Justine Marino, the wife of the City's then-Mayor, to complain regarding various aspects of her employment with the City. Id. at Def. Ex. Z. She further asked Mrs. Marino to pass her complaints along to the then-Mayor James Marino. Id. The messages were forwarded to the then-Mayor James Marino and then on to City Manager Faulk. Id.

On December 10, 2021, City Manager Faulk issued an internal memorandum clarifying that the Governor's proclamation regarding Christmas Eve and New Year's Eve as State holidays only applied to State employees – not city employees. Id. at Def. Ex. AA. While the City employees would not work the Friday of Christmas Eve because Christmas fell on a Saturday, the City employees would not additionally have the Thursday prior off in recognition of Christmas Eve. Id. at Def. Ex. N, Faulk Dep. at 206:7-207:11.

Soon after on December 12, 2021, Plaintiff tested positive for Covid-19 and was required to quarantine for at least ten days.

Id. at Def. Ex. BB; Pl. Ex. 8, Pl.'s Resp. in Opp., ECF No. 44-8. Because Plaintiff already exhausted her paid leave time, the City informed Plaintiff on December 14, 2021, that she would need to use unpaid time. Def. Ex. CC, Def.'s Mot. Summ. J., ECF No. 24-1; Pl. Ex. 9; Pl.'s Resp. in Opp., ECF No. 44-9. Plaintiff told the City that she found this "completely unfortunate and unacceptable" and believed the policy was "incredibly regressive". Id. at Def. Ex. CC.

On the same day, Plaintiff emailed the Mayor, the City Council members, and several City employees to express her grievance with having to use unpaid leave for Covid-19. Def. Ex. DD, Def.'s Mot. Summ. J., ECF No. 24-1; Pl. Ex. 10, Pl.'s Resp. in Opp., ECF No. 44-10. Plaintiff also claimed in her email that the City Manager and Human Resources Coordinator took away her donated leave time. Id. In contravention to the Handbook's grievance policy, Plaintiff did not first raise the issue of unpaid leave for Covid-19 with her direct supervisor. Def. Ex. B, Spatafore Dep. at 152:1-153:2, 231:2-7. See Id. at Def. Ex. J ("An employee with a grievance must follow the procedural guidelines established for resolving grievances.. . .STEP 1: The grievant must attempt to resolve the problem with his/hers immediate supervisor.").

The next day, Plaintiff posted a comment to a post on the City's official Facebook page regarding a Christmas Luncheon. Id. at Def. Ex. EE. The comment read:

7

> I would hardly call Cost of Living Adjustment
> a raise. If I remember correctly, it's maybe
> an extra $5.00 per pay. I have been there 7
> years and never received a "raise". I however
> do appreciate the $200 Christmas bonus.
>
> The employee party is a nice gesture. However,
> I'd much rather be "appreciated" every day at
> work by being treated with respect by the city
> manager.
>
> Also - the Governor recently declared
> Christmas Eve and New Year's Eve as holiday s
> - but the City Manager stated he does not have
> to follow the governors directives and we will
> work on Christmas Eve and New Year's Eve.
> How's that for appreciation.

Id. Plaintiff then posted the December 10, 2021 internal memorandum in the comment section. Id.

On or about December 15, 2021, Plaintiff again messaged Justine Marino regarding grievances with her employment, asking them to be shared with her husband. Id. at Def. Ex. FF. Spatafore acknowledged that she violated the grievance policy by contacting the then-Mayor's wife and asking that the information be passed along, instead of going to her direct supervisor. Id. at Def. Ex. B, Spatafore Dep. at 200:21-201:21.

The next day, the City posted on Facebook that City Hall would be closed on December 24, 2021 and December 27, 2021. Id. at Def. Ex. GG; Pl. Ex. 11, Pl.'s Resp. in Opp., ECF No. 44-11. Plaintiff again posted the internal memorandum to the comment section of the City's posting and commented, "I am questioning as when employees previously asked if we would receive Christmas Eve and New Year's

Eve going forward, we received a memo stating we would not." Id. Notably, Plaintiff and all other City employees did not work on Christmas Eve because Christmas fell on a Saturday. Def. Ex. B, Spatafore Dep. at 155: 11-159: 18.

Ultimately, the City terminated Plaintiff's employment on December 20, 2021, due to "issues including insubordination, insolence, and unsolicited distribution of internal documents." Id. at Def. Ex. FF; Pl. Ex. 13, Pl.'s Resp. in Opp., ECF No. 44-13. According to the Defendant, the insubordination related to Plaintiff violating the City's grievance policy and Plaintiff's "chronic absenteeism", including improper call-offs and extended lunch breaks. ECF No. 24 at p. 11. The distribution of internal documents referred to the December 10, 2021 internal memorandum Plaintiff posted on Facebook twice. Id. Further, the insolence referred to Plaintiff claiming the City did not follow the Governor's directives. Id.

In contrast, Plaintiff claims she was discharged in retaliation for using FMLA leave, was discriminated against because she has Crohn's disease and suffers from an eating disorder, and that she was retaliated against for speaking on a matter of public concern as a private citizen. ECF No. 44.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18.

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV. DISCUSSION

For the following reasons, Plaintiff's claims for (1) Family and Medical Leave Act ("FMLA") retaliatory discharge, (2) disability discrimination under the West Virginia Human Rights Act, and (3) retaliatory discharge in violation of a substantial

public policy do not the survive summary judgment challenge and Defendant's motion is **GRANTED.**

### A. FMLA Retaliatory Discharge

Defendant's Motion for Summary Judgment as to Count One is granted because Plaintiff failed to show the City's proffered reason for discharge was pretext for FMLA retaliation. "FMLA entitles eligible employees to take '12 workweeks of leave' during a 12-month period for a qualifying 'serious health condition that makes the employee unable to perform the functions of' [her] job." Adkins v. CSX Transp., Inc., 70 F.4th 785, 795 (4th Cir. 2023) (quoting 29 U.S.C. § 2612(A)(1)(D)). "Under 29 U.S.C. § 2615(a)(2), employers may not retaliate against employees for exercising rights under the FMLA." Cumpston, 2018 WL 4855216, at *3 (Dotson v. Pfizer, Inc., 558 F.3d 284, 295 (4th Cir. 2009)).

An FMLA plaintiff claiming retaliation must make a prima facie case showing that (1) "[s]he engaged in protected activity"; (2) "that the employer took adverse action against [her]"; and (3) "that the adverse action was causally connected to the plaintiff's protected activity." Vannoy v. Fed. Rsrv. Bank of Richmond, 827 F.3d 296, 304 (4th Cir. 2016) (quoting Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)).

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden then shifts to the defendant to provide "a legitimate, nonretaliatory reason for

taking the employment action at issue." Hannah P. v. Coats, 916 F.3d 327, 347 (4th Cir. 2019). "The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy, 827 F.3d at 304-05 (finding the employee's misconduct, failure to communicate regarding absences, and failure to complete a portion of his performance improvement plan qualified as legitimate, non-discriminatory reasons for terminating plaintiff). The Court need not decide whether an employer's discharging an employee was "wise, fair, or correct" and does not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." Feldman v. L. Enf't Assocs. Corp., 752 F.3d 339, 350 (4th Cir. 2014).

"Once the plaintiff proffers evidence establishing [her] prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" Vannoy, 827 F.3d at 304. "To do so, [the plaintiff] must offer evidence that tends to show that the defendant['s] explanation is not credible, or that retaliation is the most likely explanation." Cumpston, 2018 WL 4855216, at *4 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)). "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence

of legitimate non-discriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999). "Accordingly, to survive summary judgment on an FMLA retaliation claim, 'the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation.'" Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017) (Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016)).

Defendant first argues that there is no evidence that Spatafore's discharge was causally connected to her FMLA use because her FMLA leave was approved, and the City assisted Plaintiff in soliciting donated paid leave time from other employees. ECF No. 24 at p. 13. Furthermore, the City permitted Plaintiff to take longer lunch breaks and work later in the day to accommodate her therapy attendance. Id. Second, Defendant asserts the actual reason for Plaintiff's discharge was her violation of the City's grievance policy and posting the December 2021 internal memorandum on Facebook twice. Id. at p. 14.

Plaintiff in contrast asserts that she has established a prima facie case of FMLA retaliatory discharge. ECF No. 44 at p. 9. Plaintiff claims that to survive summary judgment all she must show is that her FMLA leave was a motivating factor in her discharge. Id. Plaintiff asserts she has created "inferences of

13

discrimination" and that the case must go to the jury, even if
Defendant has set forth a non-discriminatory reason. Id. at p. 10.
Plaintiff's claimed inference of discrimination is the "proximity
in time between when Plaintiff applied for and received FMLA leave
and the adverse employment actions taken." Id. at p. 11. Plaintiff
further claims that the City's cited reasons for terminating
Plaintiff are pretextual and that there is evidence of disparate
treatment. Id. at pp. 13-14.

Here, the Court agrees that Plaintiff's claim for FMLA
retaliation fails. The Court assumes without deciding that
Plaintiff made a prima facie case of retaliation. Nonetheless,
Plaintiff's claim fails because the City provided evidence of a
legitimate, nonretaliatory reason for taking the employment action
and Spatafore failed to proffer any evidence that the City's reason
was mere pretext.

Under the McDonnell-Douglas burden shifting framework,
Defendant provided sufficient evidence to support that Plaintiff
was discharged lawfully. The undisputed record shows that
Plaintiff posted an internal memorandum on Facebook twice, along
with comments, and ignored the grievance procedure when she went
above her direct supervisor to contact the Mayor and City Council
to complain about the Covid-19 leave policy. Moreover, the record
shows that Plaintiff had received verbal warnings for taking
extended lunches and failing to follow leave procedures – all

before she took FMLA leave. The City is well within its right to discharge an employee for poor performance, misconduct, and insubordinate behavior. The conduct presented in the record falls within this category.

Moreover, Plaintiff's proximity argument is not persuasive or sufficient to establish the City's reason for discharge was pretextual. As Defendant points out in its reply, temporal proximity must be "very close" in adverse employment actions. Kinsley v. W. Virginia Univ. Alumni Ass'n, Inc., 2020 WL 13698876, at *3 (N.D.W. Va. Mar. 16, 2020) (finding a three-month lapse between FMLA leave approval and application for promotion insufficient); Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (finding a 3-month period insufficient)). Here, Plaintiff was approved for FMLA leave in July 2021 and returned to work in September 2021. Plaintiff was not discharged until December 2021. Thus, there was approximately five months between her FMLA request and her discharge, and approximately a three-month lapse between her return to work and her discharge. Thus, the timing does not indicate an inference of discrimination and is insufficient to overcome the City's legitimate, non-discriminatory reason.

Furthermore, Plaintiff's alleged comparator evidence is insufficient because the claimed comparators are not similarly

15

situated. To plausibly use comparators as evidence of pretext, the Plaintiff must provide "evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably." Cowgill v. First Data Techs., Inc., 41 F.4th 370, 381 (4th Cir. 2022) (quoting Laing v. Federal Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013)). When evaluating whether another employee qualifies as a proper comparator, a court considers whether they "dealt with the same supervisor, [were] subject to the same standards and[,] . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curium)).

While Plaintiff provides information regarding other employees who were not discharged for their alleged misconduct, none are sufficiently similar to Plaintiff to serve as a comparator. The record shows that the claimed comparators were union employees subject to collective bargaining agreements or police officers subject to the Civil Service Commission. Aff. Tiffany Fell, Def. Ex. M, Def. Reply, ECF No. 59. Thus, these employees did not have the same supervisor and were not subject to the same standards as Plaintiff. Moreover, by Plaintiff's own admission, these employees did not engage in the same conduct as her. ECF No. 44 at p. 14 ("there are at least seven other employees

16

of Defendant who committed **much more serious violations of policies**) (emphasis added). Thus, Plaintiff cannot rely on a comparator argument to establish pretext.

Accordingly, Defendant's Motion for Summary Judgment [ECF No. 23] as to the FMLA retaliation claim is **GRANTED** and Count 1 of Plaintiff's Complaint [ECF No. 1-3] is **DISMISSED**.

**B. WVHRA Disability Discrimination**

Defendant's Motion for Summary Judgment as to Count Two is granted because there is no competent evidence that Plaintiff's discharge was unlawful. To succeed on a claim for disability discrimination, a plaintiff must establish she is "a member of a protected class," "that the employer made an adverse decision concerning the plaintiff," and "but for the plaintiff's protected status, the adverse decision would not have been made." Woods v. Jefferds Corp., 824 S.E.2d 539, 547 (W. Va. 2019).

The West Virginia Human Rights Act ("WVHRA") states

> [i]t shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . for any employer to discriminate against an individual with respect to compensation, hire, tenure, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled.

W. Va. Code Ann. § 5-11-9(1). The WVHRA defines "disability" as "a mental or physical impairment which substantially limits one or more of such person's major life activities," "[a] record of such

17

impairment," or [b]eing regarded as having such an impairment." W. Va. Code § 5-11-3(m). "Major life activities" are "caring for one's self," and other functions such as "walking, seeing, hearing, speaking, breathing, learning, and working[.]" Id. § 5-11-3(m)(1).

"Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, as set forth in McDonnell Douglas." Cumpston, 2018 WL 4855216, at *6. To set forth a prima facie case of impermissible employment discrimination under the WVHRA, Spatafore must establish: (1) that she is a member of a protected class; (2) that the employer made an adverse employment decision affecting her; and (3) that, but for her protected status, the employer would not have made the adverse decision. Id. (citing Syl. Pt. 3, Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 429 (W. Va. 1986)). To satisfy the causation element of the prima facie case, the plaintiff must "show some evidence which would sufficiently link the employer's decision and [her] status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Id. (citing Conaway, 358 S.E.2d at 429-30).

Once a plaintiff establishes a prima facie case of employment discrimination, the burden shifts to the defendant to advance a non-discriminatory reason for the plaintiff's dismissal. Conaway, 358 S.E.2d at 430. Importantly, the employer's reason "need not be

18

a particularly good one.. . .The reason can be any other reason except that the plaintiff was a member of a protected class." Id. Evidence of a legitimate and nondiscriminatory reason for the dismissal is sufficient to rebut the employee's prima facie showing. Ford Motor Credit Co. v. W. Virginia Hum. Rts. Comm'n, 696 S.E.2d 282 (W. Va. 2010). The burden then returns to the plaintiff to prove "that the facially legitimate reason given by the employer for the employment decision was merely a pretext for a discriminatory motive." Cumpston, 2018 WL 4855216, at *6. "In other words, '[t]o get to the jury, [the plaintiff] must offer sufficient evidence that the [defendant's] explanation was pretextual to create an issue of fact.'" Id. (quoting Skaggs v. Elk Run Coal Co., Inc., 479 S.E.2d 561, 583 (W. Va. 1996)).

Here, Defendant asserts that Plaintiff's claim fails because Plaintiff's medical conditions did not prevent her from performing her job duties and she was discharged for non-discriminatory reasons. ECF No. 24 at p. 14. First, Defendant claims Plaintiff cannot establish that she suffered from a disability because she was able to perform all her job's functions. Id. at p. 15 (citing Dickerson v. W Virginia State Treasurer's Off, 2020 WL 4354929, at *4 (W. Va. July 30, 2020). Second, Defendant asserts that Plaintiff did not offer any evidence to support that she was terminated because of a disability. Id. at pp. 15-16.

In support of Plaintiff's disability discrimination claim, she asserts that it is undisputed that she has Crohn's disease and suffers from an eating disorder. ECF No. 44 at p. 17. She further states that these conditions substantially limited her from working because she missed six weeks of work while in a rehabilitation program. Id. at p. 18. Plaintiff further asserts that there was a record of her impairment because the City approved her FMLA leave. Id. at p. 19. Additionally, Plaintiff states that her disability discrimination claim does not require her to have sought an accommodation upon returning to work following the rehabilitation program. Id. at p. 20.

Furthermore, Plaintiff relies upon the time proximity to support the causation element. Id. She also claims the proffered discharge reason was pretextual because City staff discussed her FMLA leave when deciding to terminate her employment. Id. at pp. 20-21.

Plaintiff's disability discrimination claim cannot survive summary judgment because Plaintiff failed to create a dispute of material fact over whether her discharge was unlawful. The disability discrimination claim fails for many of the same reasons as the FMLA retaliation claim. First, the Court assumes without deciding that Plaintiff's eating disorder and Crohn's disease qualify as disabilities under the WVHRA. Thus, the Court assumes Plaintiff is a member of a protected class. Furthermore, there is

20

no dispute that Plaintiff suffered an adverse employment action when she was discharged in December 2021. Thus, the issue is whether Plaintiff would have not been discharged, but for her claimed disability.

As with the FMLA claim, Plaintiff relies upon temporal proximity to support the causation element and to support pretext. Even assuming that the proximity argument would be sufficient to create the inference of discrimination for Plaintiff's prima facie case, the record does not contain sufficient evidence to support that the termination was unlawful.

Defendant set forth evidence of its legitimate reasons for discharging Plaintiff - insubordination, insolence, and unsolicited distribution of internal documents. The complained-of misconduct took place after Plaintiff returned from her FMLA leave and serves as intervening misconduct to cut off any presumption that her discharge was related to her claimed disabilities. The record supports that the City was supportive of Plaintiff's rehabilitation efforts by promptly approving her FMLA leave, coordinating paid leave donations, and accommodating Plaintiff's work schedule to allow periodic therapy appointments.

Moreover, Plaintiff does not dispute that she engaged in the very misconduct underlying her discharge. The City is not obligated to refrain from discharging an insubordinate or insolent employee

simply because she has a disability.[2] And, as with the FMLA retaliation claim, Plaintiff's temporal proximity argument is insufficient to create a dispute of fact for the jury. Plaintiff's discharge took place close-in-time to the Facebook posts and the email to the Mayor and City Council. Thus, the proximity counts against Plaintiff's position.

Accordingly, Plaintiff's claim for disability discrimination fails because there is no dispute of fact that she was discharged for legitimate, non-discriminatory reasons. Thus, Defendant's Motion for Summary Judgment [ECF No. 23] is **GRANTED** as to the disability discrimination claim and Count Two of Plaintiff's Complaint [ECF No. 1-3] is **DISMISSED**.

### C. **Harless** Retaliatory Discharge

Defendant's Motion for Summary Judgment as to Count Three is granted because Plaintiff's Facebook postings are not protected speech. Plaintiff's third cause of action alleges that she was terminated in violation of a substantial public policy of the state of West Virginia.

---

[2] The Court is unpersuaded by Plaintiff's argument that her discharge was discriminatory because the City discussed her health conditions and FMLA leave when planning her discharge. It is entirely reasonable for an employer to consider potential liabilities with legal counsel when making employment decisions. The record makes clear that Plaintiff's Crohn's disease, eating disorder, or FMLA leave were not a basis for her discharge. See Def. Ex. T, ECF No. 24-1 ("We are still moving forward with termination of Dominique Medina based upon her contact with council/Justine Marino. Further adding fuel to the decision are the FB posts.").

> The rule that an employer has an absolute
> right to discharge an at will employee must be
> tempered by the principle that where the
> employer's motivation for the discharge is to
> contravene some substantial public policy
> principle, then the employer may be liable to
> the employee for damages occasioned by this
> discharge.

Syl., Harless v. First Nat'l Bank of Fairmont, 246 S.E.2d 270 (W. Va. 1978). To succeed on a Harless retaliatory discharge, a plaintiff must prove: (1) "[t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W. Va. 2018). "The determination whether a substantial public policy exists is a question of law for the court." Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp. 3d 556, 562–63 (N.D.W. Va. 2015)

> When an employee makes a prima facie case of
> discrimination, the burden then shifts to the
> employer to prove a legitimate, nonpretextual,
> and nonretaliatory reason for the discharge.
> In rebuttal, the employee can then offer
> evidence that the employer's proffered reason
> for the discharge is merely a pretext for the
> discriminatory act.

Syl. Pt. 4, <u>Birthisel v. Tri-Cities Health Servs. Corp.</u>, 424 S.E.2d 606 (W. Va. 1992) (internal citation omitted).

Specifically, Plaintiff claims that her discharge was in retaliation for making comments relating to an issue of public concern in violation of the West Virginia Constitution. ECF No. 1-3 at ¶ 46. Article III, Section 7 of the West Virginia Constitution provides:

> No law abridging the freedom of speech, or of the press, shall be passed; but the Legislature may, by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

W. Va. Const. art. III, § 7. Because the First Amendment of the United States Constitution and the State Constitution are "virtually identical in pertinent parts," cases interpreting the freedom of speech protections are considered interchangeably. <u>State By & Through McGraw v. Imperial Mktg.</u>, 472 S.E.2d 792, 805 n.43 (W. Va. 1996).

> Under <u>Pickering v. Board of Education</u>, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), public employees are entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights. However, <u>Pickering</u> recognized that the State, as an employer, also has an interest in the efficient and orderly operation of its affairs that must be balanced with the public

employees' right to free speech, which is not absolute.

Syl. Pt. 4, <u>Alderman v. Pocahontas Cnty. Bd. of Educ.</u>, 675 S.E.2d 907, 910 (W. Va. 2009); Syl. Pt. 3, <u>Orr v. Crowder</u>, 173 335, 315 S.E.2d 593 (W.Va. 1983).

There are some general restrictions on a public employee's right to free speech. <u>Id.</u> at 917.

> First, an employee's speech, to be protected, must be spoken as a citizen on a matter of public concern.. . .The second factor that is invoked considers statements that are made with the knowledge that they were false or with reckless disregard of whether they were false, and such statements are not protected. The third factor that is invoked considers statements made about persons with whom there are close personal contacts that would disrupt discipline or harmony among coworkers or destroy personal loyalty and confidence, and such statements may not be protected.

<u>Id.</u> at Syl. Pt. 5 in part. "If the employee did not speak as a citizen on a matter of public concern, then the employee has no First Amendment cause of action based on the employer's reaction to the speech." <u>Id.</u> The public employee bears the burden "to show that conduct is constitutionally protected and, further, that this conduct was a substantial or motivating factor in the employment decision." <u>Id.</u> at Syl. Pt. 6 in part. If the public employee meets this burden, the public employer then "must show by a preponderance

of the evidence that it would have reached the same decision. . . in the absence of the protected conduct." Id.

"Speech involves a matter of public concern if it affects the social, political, or general well-being of a community." Bloom v. Bd. of Educ. of Monongalia Cnty., 2013 WL 5966398, at *3 (N.D.W. Va. Nov. 8, 2013) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999)). However, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment." Id. "In deciding whether certain speech falls on the 'public concern' or 'purely personal' side of the line, we naturally look to the 'content, context, and form of the speech at issue in light of the entire record.'" Carey v. Throwe, 957 F.3d 468, 475 (4th Cir. 2020) (internal citations omitted).

Here, Defendant argues that Plaintiff's Harless claim fails for several reasons. No. 24 at p. 18. First, the City contends Spatafore was not speaking as a private citizen on a matter of public concern when she commented on the Facebook posts because she identified herself as a City employee in the post comment and on her Facebook profile. Id. at pp. 18-19. Furthermore, the Handbook provides a social media policy for employees which states:

> An employee who identifies on a social media
> account the employee's affiliation with the
> City, and does not disclaim speaking on behalf

26

> of the City in the social media profile or in
> a specific post, will be deemed to be using
> social media as a City employee.
>
> . . .
>
> City employees must make it clear when they
> are speaking for themselves and not on behalf
> of the City. If employees publish content on
> any website outside of City control and it has
> something to do with the work they do or
> subjects associated with the City, use a
> disclaimer such as this: "The postings on this
> site are my own and don't necessarily
> represent the City's positions or opinions.

Def. Ex. J at 109-110, ECF No. 24-1. Defendant additionally states that the internal memorandum Plaintiff posted was not a matter of public concern. ECF No. 24 at p. 20.

Second, Defendant argues Plaintiff's posts are not constitutionally protected because the posts were false. Id. Specifically, Plaintiff posted that City employees would be working Christmas Eve, even though the employees were already scheduled to be off on December 24, 2021. Id. And third, Defendant claims that Plaintiff's posts are not protected because they involve persons with close personal contacts which could disrupt the discipline and harmony for City employees. Id. at p. 21. For example, Defendant argues that Plaintiff's claim that the City Manager does not follow the Governor's directives indicates that Mr. Faulk acted wrongfully, when he did not. Id.

Plaintiff, in contrast, asserts that when considering the content, form, and context of her speech, she was speaking as a private citizen on a matter of public concern. ECF No. 44 at p. 24. First, Plaintiff claims she was speaking as a private citizen because she made the posting from home on her personal Facebook account, while she was not working. Id. Second, Plaintiff argues the matter of public concern she was speaking on was whether City Hall would be open during the holidays. Id. at p. 27. Third, Plaintiff argues that that there is no evidence that Plaintiff's speech disrupted the City's operations. Id. at p. 31. Finally, Plaintiff asserts that her discharge was caused by the exercise of her free speech rights based on the timing and the City's proffered reasons for termination. Id. at p. 31.

Here, Plaintiff's Harless claim fails because she was not speaking as a private citizen on a matter of public concern. First, the West Virginia Constitution and its free speech protections constitute a substantial public policy to support a Harless claim. However, the record demonstrates that Plaintiff's speech at issue was not protected – considering the content, form, and context.

First, Plaintiff was not speaking as a private citizen. Plaintiff identified herself as a seven-year employee of the City in the Facebook comment on December 13, 2021. Furthermore, she would not have possessed the internal memorandum clarifying the Governor's Order but for her employment with the City, and thus

could not have posted it if she was not an employee. Moreover, Plaintiff's comments did not include any of the disclaimers required of a City employee posting on Facebook as an identified employee. Spatafore did not make it clear that she was speaking for herself and not behalf of the City when discussing topics related to work and the City. Plaintiff was provided with the social media policy and expected to follow its policies. Thus, Plaintiff was not speaking as a private citizen.

Second, despite Plaintiff's characterization of the Facebook comments, they did not relate to issues of public concern. The purpose of the Facebook comments was not to discuss whether City Hall was going to be open on Christmas Eve and New Year's Eve. The December 13, 2021 comment discussed City employee pay raises and bonuses, the ways in which City employees are appreciated, and allegations that employees would need to work on Christmas Eve and New Year's Eve. Whether City Hall is open on a given day and whether employees are required to work on a certain day are not the same topics. Plaintiff was clearly not making the comment to inform citizens on when City Hall and its services would be available. No, Plaintiff was lamenting how she, as an employee, felt unappreciated because she did not receive Christmas Eve as a holiday from work. The same is true of Plaintiff's December 16, 2021 Facebook comment. The City's Facebook post itself informed citizens that City Hall would be closed on December 24, 2021 and

December 27, 2021. Plaintiff's comment, however, only related to the matter of when employees would be working. Employee schedules are not a matter of public concern.

While these findings are enough to show that Plaintiff's Harless claim fails, the Court also notes that Spatafore's comments are additionally not protected because they were made with, at least, a reckless disregard of their falsity. City employees did not work on December 24, 2021, but Plaintiff's Facebook comments indicated that employees would be working Christmas Eve. Rather, Plaintiff wanted the City to give employees an additional paid day off in recognition of Christmas Eve on December 23, 2021. Furthermore, it cannot be legitimately argued that Spatafore's comments regarding City employee pay, working hours, and appreciation could not disrupt operations of the City or lead to employee conflict.

When looking at the content, form, and context of Plaintiff's Facebook comments, none of Plaintiff's statements related to matters of a public concern to warrant protection. Rather, Plaintiff expressed her personal grievances and complaints about conditions of her employment online. Thus, the speech was not protected and served as a lawful basis for Plaintiff's termination. Accordingly, Defendant's Motion for Summary Judgment [ECF No. 23] as to Count Three is **GRANTED** and Count Three of Plaintiff's Complaint [ECF No. 1-3] is **DISMISSED**.

### V.   CONCLUSION

For the foregoing reasons, Defendant, City of Clarksburg's Motion for Summary Judgment [ECF No. 23] is **GRANTED** and Plaintiff's Complaint [ECF No. 1-3] is **DISMISSED WITH PREJUDICE.** Additionally, all other pending motions are hereby **DENIED AS MOOT** [ECF Nos. 61, 62, 70].

This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of the City of Clarksburg.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  September 23, 2024

_Tom S Klnl_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA